IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

JOSHUA CROMARTIE,

    Plaintiff,

v.

SHAUN DAUGHTRY, in his individual capacity,

    Defendant.

Civil Action No. 5:23-cv-202

**COMPLAINT**

Plaintiff Joshua Cromartie ("Plaintiff" or "Mr. Cromartie") brings this action against Defendant Shaun Daughtry, in his individual capacity ("Defendant Daughtry"), and alleges as follows:

## NATURE OF THE ACTION

1. Mr. Cromartie, a black man, was subjected to excessive force by Defendant Daughtry – a Wayne County Sheriff's deputy – when Defendant Daughtry needlessly sprayed Mr. Cromartie in the face and eyes, at point-blank range, with oleoresin capsicum ("OC") spray.

2. At the time he was sprayed, Mr. Cromartie was being prepared for release from custody.

3. On May 31, 2020, Mr. Cromartie was arrested on suspicion of driving while impaired, but those charges were ultimately dismissed. He was taken to the Wayne County Detention Center, where he was processed and quickly released. During his release, Mr. Cromartie was docile, compliant, and peaceful and obeyed commands. Despite this,

Defendant Daughtry blasted Mr. Cromartie directly in the face and eyes at point-blank range, using expletives and laughing about the spray's effects on Mr. Cromartie.

4. As a result of Defendant Daughtry's actions, Mr. Cromartie suffered immediate injury, and continues to suffer from severe emotional distress, including debilitating anxiety, fearfulness, and distrust.

5. Mr. Cromartie brings this action to seek relief for violations of his constitutional rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and pursuant to 42 U.S.C. § 1983 for excessive force (Count I). He also brings this action to seek damages under North Carolina law for battery and punitive damages (Counts II-III).

## PARTIES

6. **Plaintiff Joshua Cromartie** is a resident and citizen of Wayne County, North Carolina. He was 22 years old and an expectant father at the time of the incident.

7. **Defendant Shaun Daughtry** is, upon information and belief, a resident and citizen of Faison, Duplin County, North Carolina. At all relevant times, Defendant Daughtry was a duly appointed sheriff's deputy and employee of the Wayne County Sheriff's Office. At all relevant times, Defendant Daughtry was acting under the color of state law. Plaintiff sues Defendant Daughtry in his individual capacity.

## JURISDICTION AND VENUE

8. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of his civil rights as guaranteed by the United States Constitution and under North Carolina state law for battery during an arrest.

9. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action based on violations of 42 U.S.C. § 1983 (Count I).

10. This court has supplemental jurisdiction over Plaintiff's state law claims for battery and punitive damages (Counts II and III) pursuant to 28 U.S.C. § 1367.

11. Defendant is subject to the personal jurisdiction over this court because he was employed in Wayne County, North Carolina, and engaged in the conduct that is the subject of this lawsuit there, which is within this judicial district.

12. Venue is proper in the Eastern District of North Carolina, as the events giving rise to this action occurred in Wayne County, North Carolina, which is within this judicial district.

## FACTS

13. On May 31, 2020, Mr. Cromartie went to the store to pick up a few items for his mother. Upon arriving at the store, Mr. Cromartie noticed a North Carolina Wildlife Officer ("NCWO") in the parking lot. As Mr. Cromartie returned to his car, he noticed that the NCWO had been watching him. Mr. Cromartie proceeded to return home to deliver the groceries to his mother.

14. When Mr. Cromartie pulled out of the grocery store parking lot, he noticed that the NCWO was following him and, shortly thereafter, he saw the NCWO's patrol lights in his rearview mirror.

15. Mr. Cromartie pulled over, and the NCWO approached Mr. Cromartie's window for a routine traffic violation. NCWO asked Mr. Cromartie if he had been drinking, and Mr. Cromartie truthfully said, "no."

16. Even though Mr. Cromartie blew a 0.00 on the preliminary blood alcohol breath test, the NCWO arrested Mr. Cromartie for suspicion of driving while impaired. Mr. Cromartie was immediately taken to the hospital to have his blood alcohol level taken. then to the Wayne County Courthouse.

17. Following his blood draw, Mr. Cromartie was taken to the Wayne County Courthouse, where he appeared before a magistrate judge. He was then taken to the Wayne County Detention Center, where he was placed in the custody of the Wayne County Sheriff's Department to be fingerprinted, photographed and ultimately released upon a written promise.

18. While still in the custody of the Wayne County Sheriff's Department, but preparing for his release, Mr. Cromartie was subjected to excessive force by Defendant Daughtry's unnecessary use of OC spray.

19. At the time, Mr. Cromartie was obedient to all commands by the Sheriff's deputies at the Wayne County Detention Center. Mr. Cromartie made no signs of protest, aggressive gesture or other combative behavior. He was sitting on a bench and was docile,

compliant, and peacefully conversing with at least two members of the Wayne County Sheriff's Department shortly before the assault.

20. When ordered by the deputies, Mr. Cromartie stood up and put his hands against the adjacent wall. He was patted down by the two deputies. Once the search was completed, Mr. Cromartie was instructed to back turn around, which would put him face-to-face with the deputies. He complied without protest.

21. Immediately after turning around, he was met – by complete surprise – with a large canister of OC spray held by Defendant Daughtry. Defendant Daughtry blasted Mr. Cromartie directly in the face and eyes at point-blank range. This was done for no evident reason, as Mr. Cromartie was complaint and posed no danger to the deputies, who had just patted him down.

22. Immediately after this attack by Defendant Daughtry, the other Wayne County Sheriff's deputy exclaimed, "that will shut him the fuck up." Defendant Daughtry then taunted Mr. Cromartie by saying, "that shit hurt don't it?"

23. Indeed, Defendant Daughtry was correct that the application of OC spray directly into Mr. Cromartie's face and eyes was extremely painful.

24. Against Wayne County Sheriff's Office policy, this use of force against Mr. Cromartie was not recorded or registered by either Defendant Daughtry or the other Wayne County Sheriff's deputy.

25. Soon after Mr. Cromartie was released, his parents met with Major Robert Thaxton ("Major Thaxton"), a senior officer at the Wayne County Sheriff's Office and

Defendant Daughtry's superior. After reviewing the video evidence, Major Thaxton candidly admitted that Defendant Daughtry's actions were improper, that Mr. Cromartie posed no threat to the deputies or any other person and that there was no reason for the application of force.

26. Mr. Thaxton made it clear that Deputy Daughtry's use of force was actionable. He said of Mr. Cromartie, "[i]f he wants to get a lawyer and seek restitution, tell him I said do it."

27. Unfortunately, although he was soon released, Mr. Cromartie left the jail a different person than he had come in just earlier that day. Before this, Mr. Cromartie was a social man who loved being surrounded by people. Now, he is distant, detached and self-isolated. This event has also forever changed his outlook on how law enforcement views him.

28. Mr. Cromartie was and remains emotionally distressed and disturbed by Defendant Daughtry's treatment of him. Mr. Cromartie had to take a week off work because his mental distress was so severe and debilitating. He was unable to eat or sleep for weeks and he sought counseling to help with the increased anxiety and depression he experienced due to these events.

29. The day after his arrest, Mr. Cromartie and his fiancé were scheduled to find out the gender of their baby. Mr. Cromartie had always wanted a boy, but due to the way he was treated as a black man by Defendant Daughtry, he began instead to pray for a girl. That next day, instead of being able to fully celebrate and enjoy this important first as a

father-to-be, Mr. Cromartie was withdrawn and deeply concerned for both his future and the future of his unborn child.

30. To this day, he remains fearful every day about how he may be approached and treated by law enforcement, and also about how his child will be treated.

## COUNT I
## VIOLATION OF CIVIL RIGHTS – EXCESSIVE FORCE
## 42 U.S.C. § 1983

31. Plaintiff incorporates preceding paragraphs 1 through 30 by reference as if fully set forth herein.

32. Defendant Daughtry violated Mr. Cromartie's constitutional rights as guaranteed by the Fourth Amendment of the United States Constitution, which have been incorporated against state and local governments by the Fourteenth Amendment.

33. Defendant Daughtry was, at all times relevant hereto, acting under color of state law as a deputy of the Wayne County Sheriff's Office.

34. Mr. Cromartie has and had a clearly established, constitutional right to be secure in his person and free unreasonable seizure, and unlawful, reckless, deliberately indifferent excessive force against his person.

35. Defendant Daughtry violated Mr. Cromartie's rights when by using excessive and unreasonable force against him under the totality of the circumstances. Specifically, Defendant Daughtry sprayed a large canister of OC spray in Mr. Cromartie's face and eyes at point-blank range while Mr. Cromartie was compliant, docile, unarmed and posed no threat to Defendant Daughtry or anyone else.

36. The level of force used by Defendant Daughtry was far more than the force reasonably necessary to defend himself or another. In fact, there was no reasonable need to use any force against Mr. Cromartie, much less the level of force employed by Defendant Daughtry.

37. Any objective, reasonable police officer would have known that such actions violated the rights of Mr. Cromartie and constituted excessive force under clearly established law.

38. As a direct and proximate result of Defendant Daughtry's conduct, Mr. Cromartie suffers and will continue to suffer both physical and emotional harm.

39. As a direct and proximate result of Defendant Daughtry's conduct, Mr. Cromartie has incurred and will continue to incur medical and other costs.

40. Defendant Daughtry's above-described actions deprived Mr. Cromartie of the securities, rights, privileges, and immunities secured by the Constitution of the United States of America and caused him other damages in an amount to be proven at trial.

41. Mr. Cromartie is entitled to recover from Defendant Daughtry all damages allowed by law, including compensatory and punitive damages, in an amount to be determined at trial.

42. In the alternative, Defendant Daughtry's actions were willful, wanton, reckless, or done with a reckless and outrageous disregard to the health, safety, and welfare of Mr. Cromartie. Accordingly, Mr. Cromartie is entitled to recover punitive damages.

43. Mr. Cromartie is also entitled to recover reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT II
### BATTERY

44. Plaintiff incorporates all preceding paragraphs 1 through 43 by reference as if fully set forth herein.

45. Defendant Daughtry's intentionally sprayed Mr. Cromartie in the eyes and face with OC spray. This action constituted a harmful or offensive contact with Mr. Cromartie.

46. Defendant Daughtry's spraying Mr. Cromartie in the face with OC spray actually offended Mr. Cromartie's reasonable sense of personal dignity.

47. Defendant Daughtry's spraying of Mr. Cromartie with OC spray resulted in physical pain and physical, psychological, and emotional injury.

48. Mr. Cromartie did not consent to this harmful and offensive contact by Defendant Daughtry.

49. The use of OC pepper spray on Mr. Cromartie by Defendant Daughtry occurred while Mr. Cromartie had been arrested, his activities had been interrupted by his arrest and his freedom had been significantly restricted.

50. As Mr. Cromartie posed no threat to any person at the time, the use of OC pepper spray on his face and eyes by Defendant Daughtry was excessive and far greater than the contact reasonably needed under the circumstances, as would have been judged by an objective reasonable officer under the facts and circumstances.

51. As a direct and proximate result of Defendant Daughtry's battery, Mr. Cromartie suffers and will continue to suffer both physical and emotional harm.

52. As a direct and proximate result of Defendant Daughtry's battery, Mr. Cromartie has incurred and will continue to incur medical and other costs.

53. Mr. Cromartie is entitled to recover from Defendant Daughtry all damages allowed by law, including compensatory and punitive damages, in an amount to be proven at trial.

## COUNT III
## PUNITIVE DAMAGES

54. Plaintiff incorporates all preceding paragraphs 1 through 53 by reference as if fully set forth herein.

55. Defendant Daughtry's conduct as described herein – his excessive force and battery on Mr. Cromartie – was willful and wanton, including more than grossly negligent and in conscious and intentional disregard and indifference to the rights and safety of others, including Mr. Cromartie, which Defendant Daughtry should have known was reasonably likely to result in injury, damage or other harm, and which did result in injury, damage and other harm.

56. Punitive damages should be awarded against Defendant Daughtry to punish Defendant Daughtry and potential defendants from the same or substantially similar intentional and reckless conduct.

57. Mr. Cromartie seeks and is entitled to punitive damages from Defendant Daughtry in the full amount allowed under the law, Two Hundred Fifty Thousand Dollars ($250,000.00) or three times compensatory damages, whichever is greater.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cromartie prays as follows:

1. Award Plaintiff compensatory damages in an amount to be determined by a jury; and

2. Award Plaintiff punitive and exemplary damages, in an amount determined by a jury, on each of the above-stated counts; and

3. Award Plaintiff attorneys' fees and cost of this action; and

4. Award the prejudgment interest of the damages, attorneys' fees and costs of this action, to be taxed to the Defendant, as of the date of the filing of this Complaint; and

5. Award Plaintiff such other and further relief as may be appropriate.

## JURY DEMAND

Plaintiff Joshua Cromartie hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted this 17th day of April, 2023.

**EDWARDS BEIGHTOL, LLC**

 /s/ Catharine E. Edwards
Catharine E. Edwards
North Carolina State Bar No. 52705
J. Bryan Boyd
North Carolina State Bar No. 27726

P.O. Box 6759
Raleigh, NC 27628
Phone: (919) 636-5100
cee@eblaw.com
jbb@eblaw.com

*Attorneys for Plaintiff*